(February 18, 1911.)

## W. B. TEETER, Respondent, v. THE NAMPA & MERIDIAN IRRIGATION DISTRICT, Appellant.

[114 Pac. 8.]

FLOOD WATERS—FLOODING LANDS.

(Syllabus by the court.)

1. In the winter and early spring months, flood waters gather from time to time in several draws or basins above respondent's lands and flow down across appellant's canal and over and upon the lands of the respondent in large volumes. The irrigation district, in order to prevent these flood waters washing out the banks of its canal and breaking down the canal, built a spillway 16 feet wide in the bank of the canal on the lower side, and when the flood waters come, opens the spillway and allows the entire volume of water to run through and upon the lands of respondent. It appears that in the natural flow of water down these draws and drainage basins, it runs in several channels and spreads out over the lands of the respondent; *held*, that the irrigation district cannot collect the waters and pour them out through one spillway in one volume on to the lands of the respondent so as to increase the damage done to his lands, but that, on the contrary, the district must, if it desires to collect the waters and turn them through spillways, so distribute the waters as to allow them to flow over the respondent's land in as nearly the same manner and proportion as they would in their natural state, and in such manner as to do no greater damage than they would inflict on respondent in their usual and ordinary flow.

APPEAL from the District Court of the Third Judicial District, in and for the County of Ada. Hon. Fremont Wood, Judge.

Action by plaintiff for an injunction. Judgment for plaintiff and defendants appeal. *Affirmed.*

Hugh E. McElroy and C. E. Winstead, for Appellant.

Defendant's canal was never designed for the protection of plaintiff's land against violent floods in the winter time. It was planned for the safe carriage of a specific quantity of artificial water in the summer time; and in so far as defendant and its predecessors in interest have from time to time permitted flood water to run into the canal, rendering it unsafe and dangerous, they have been guilty of maintaining a public nuisance. (*Lewiston v. Booth,* 3 Ida. 692, 34 Pac. 809; *Cloverdale v. Smith,* 128 Cal. 232, 60 Pac. 851.)

G. G. Adams, for Respondent.

Eliminating all other phases of this case, and even conceding that an easement once existed over the land of the plaintiff, that easement would have to be exercised and enjoyment had in its original form and mode of use, and such easement would not vest in the defendant the right to drop the flood water on to the land of the plaintiff in the manner by which it is sought to be discharged thereon. (2 Farnham on Waters, p. 965, and cases cited under note 1, and p. 975; *Livingston v. McDonald,* 21 Iowa, 160, 89 Am. Dec. 563; *Porter v. Durham,* 74 N. C. 767; *Hicks v. Silliman,* 93 Ill. 255; *Martin v. Jett,* 12 La. 501, 32 Am. Dec. 120; *Hooper v. Wilkinson,* 15 La. Ann. 497, 77 Am. Dec. 194; *Mellor v. Pilgrim,* 3 Ill. App. 476, 7 Ill. App. 306; *Chi. & A. R. Co. v. Connors,* 25 Ill. App. 561; *Chi. & A. R. Co. v. Glenney,* 28 Ill. App. 364; *Weddell v. Harper,* 124 Ind. 315, 24 N. E. 368; *Stinson v. Fishel,* 93 Iowa, 656, 61 N. W. 1063; *Horton v. Sullivan,* 97 Mich. 282, 56 N. W. 552; *Hogenson v. St. M. & M. Co.,* 31 Minn. 224, 17 N. W. 374; *Ill. Cen. R. Co.*

*v. Miller,* 68 Miss. 760, 10 So. 61; *Benson v. Chi. & A. R. Co.,* 78 Mo. 504.)

The establishment of an artificial watercourse imposes upon the one responsible for it an added responsibility for keeping it in safe condition. If for his own convenience a person undertakes to maintain it in a new direction, or in a more confined space, he must take due care that it shall do no injury. (3 Farnham on Waters and Water Rights, p. 1492; citing *Wilson v. Boise City,* 6 Ida. 391, 55 Pac. 887.)

AILSHIE, J.—This action was instituted by the plaintiff for the purpose of securing judgment restraining and enjoining the defendant, the Nampa & Meridian Irrigation District, from maintaining a spillway in its canal and from using the same to turn out flood waters so as to flow over and across the plaintiff's land. The court heard the proofs and rendered and entered judgment in favor of the plaintiff enjoining and restraining defendant from maintaining the spillway, as the same had been constructed in its canal, and from turning out the waters on to the lands of the plaintiff.

Plaintiff owns a farm in what is known as Eight-mile Bottom, in the Boise Valley. The defendant is the owner of what is commonly known as the Ridenbaugh canal. This canal runs along and by respondent's lands on the east side thereof, the canal being above the lands on the upper or higher lands. In this locality the canal crosses a series of draws or natural drainage basins, the principal ones of which are designated as Five-mile, Seven-mile, Eight-mile, and Ten-mile creeks. It appears that in the winter and early spring from January to March more or less flood water comes down these draws from the higher lands and flows over and across plaintiff's land. The volume of water flowing down these draws varies according to the amount of snowfall and the rapidity of the break-up or thaw-out in the early spring, and is also governed by the amount of rainfall during these months. The flood of waters coming down these draws is sometimes of a very short duration, lasting only an hour or two. It seems that the water comes down these several

drainage basins, and when not controlled in any way spreads out over the lands of the plaintiff without doing any considerable damage. It appears that these floods have generally had a disastrous effect on the defendant's canal, washing away the banks thereof and breaking down the canal for some distance. The defendant company conceived the idea of gathering the waters in the canal by having the banks on the lower side higher than those on the upper side and letting it all out at one place by means of a spillway which it constructed 16 feet wide. This resulted in pouring the water out in one volume through the spillway on to the plaintiff's premises, and it was for the purpose of restraining and enjoining this action and the maintenance of the spillway for this purpose that the present suit was instituted.

The appellant company contends that all the flood water coming down these draws or basins has been accustomed in its natural course to flow over and across the plaintiff's lands, and that the appellant has in no way increased the volume or caused any more water to flow over the lands of the respondent than has usually flowed across those lands, and that it is therefore not responsible, and should not be enjoined from maintaining its spillway in the bank of its canal. The respondent contends, on the other hand, that the waters in their natural flow came down at least three different channels and spread out over the lands so that they did no material damage to his farm, and that the injury and damage done him by the appellant consists in its collecting the waters from these several channels into the canal and then letting them all out at one place through the spillway; that by so doing the waters were poured out on his lands in one great torrent, thus washing out and cutting channels in his land and thereby doing him much damage.

There can be no doubt but that the appellant is under no obligation to collect these flood waters and carry them off through its canal. It cannot be expected, or required to do so. The natural flood waters which gather in these draws and basins must necessarily flow down over the respondent's land. It is clearly shown that the canal has not sufficient

capacity to carry off these waters. The respondent, on the other hand, has a right to insist that they come down in their natural channels or in such manner as not to augment the dangers and damages which they would ordinarily entail upon respondent's land. If the appellant desires to collect these flood waters in its canal and let them out through spillways, it may undoubtedly do so. But it must so distribute them as to cause them to flow down over respondent's lands in the accustomed channels, and at such places and in such manner as to distribute the waters in like manner and volume as they were accustomed to flow in their natural course, and thereby entail upon the respondent the minimum of damage, and not increase the dangers and damages over that caused by the flow of the waters in their natural course. This is clearly just and equitable as between the canal owner and the land owner. Each must recognize and respect the rights of the other and at the same time each is entitled to the fair and reasonable enjoyment of his own property. The appellant should not be allowed to collect the entire volume of water and turn it out through one spillway and thereby increase the burden, dangers and damages such waters will cause to the respondent's lands.

The judgment should be *affirmed*, and it is so ordered. Costs awarded in favor of the respondent.

Stewart, C. J., and Budge, District Judge, concur.

### ON PETITION FOR REHEARING.

#### (March 17, 1911.)

SULLIVAN, J.—A petition for rehearing has been filed in this case.

In the opinion heretofore filed, it appears that the judgment of the court below was affirmed. On a re-examination of the matter we find that this court held that appellant was entitled to maintain and use the spillway in controversy for the purpose of delivering on to the land of respondent in the channel in which said spillway is situated, the natural

flood water coming down said channel, and in said opinion, Mr. Justice Ailshie, speaking for the court, said:

"The appellant is under no obligation to collect these flood waters and carry them off through its canal. . . . . If the appellant desires to collect these flood waters in its canal and let them out through spillways, it may undoubtedly do so. But it must so distribute them as to cause them to flow down over respondent's lands in the accustomed channels, and at such places and in such manner as to distribute the waters in like manner and volume as they were accustomed to flow in their natural course, and thereby entail upon the respondent the minimum of damage, and not increase the dangers and damages over that caused by the flow of the waters in their natural course."

This is precisely what the judgment of the court below would not permit the appellant to do. The conclusion of this court in said opinion will be modified to this effect: That the cause will be remanded, with instructions to the trial court to modify its former judgment in conformity with the views expressed in the opinion.

Ailshie, Presiding J., concurs.