524 P.2d 1073

**Ardell DAYLEY et al., Plaintiffs-Respondents,**

**v.**

**CITY OF BURLEY, Idaho, a municipal corporation, Defendant-Appellant.**

**No. 11212.**

Supreme Court of Idaho.

July 22, 1974.

William A. Parsons, Parsons & Smith, Burley, for defendant-appellant.

Donald J. Chisholm, Goodman, Duff & Chisholm, Rupert, for plaintiffs-respondents.

McFADDEN, Justice.

The plaintiff-respondents, Ardell Dayley and Max Dayley with their wives, instituted this quiet title action against the City of Burley and other defendants. The claims of all defendants other than the city were settled and are not involved in this appeal. In their complaint the plaintiffs alleged that the city had caused certain storm sewers or drains to be constructed which accumulated and diverted storm waters onto plaintiffs' property, which they sought to enjoin. The defendant city answered the complaint, denying the allegations therein and as an affirmative defense to the action alleged that the city was merely placing surface water in the storm sewers or drains and that it was discharging this water into a natural channel known as Goose Creek which had existed for many years.

At trial the parties generally agreed to the facts, although each side did offer a number of exhibits and the testimony of witnesses. Following trial, the trial court entered findings of fact, conclusions of law and judgment which held that the City of Burley had no claim, title, interest or right of way in any of the plaintiffs property and quieted title in the plaintiffs. The judgment also enjoined the city from diverting storm waters into Goose Creek channel, and required the city to take necessary steps to remove the encroachment of storm waters from plaintiffs' property. The defendant city appealed from this judgment.

In this appeal the city claims the trial court erred in determining that the city had no right to discharge surface waters from its streets into Goose Creek, a natural drain. It also claims the trial court erred in finding that Goose Creek was not a natural drain and in finding there had been an abandonment of the creek. The city also claims the trial court erred in enjoining the city from diverting storm water into Goose Creek and in ordering the city to remove encroachments of storm waters from the plaintiffs' property.

Formerly Goose Creek was a natural stream which flowed northerly from mountains south of Oakley until it emptied into the Snake River northerly from Burley. In 1921 a dam was constructed across the stream near Oakley which impounded the waters and drainage of Goose Creek into a reservoir created by the dam. One channel of Goose Creek meandered through the City of Burley and bisected the land owned by the plaintiffs.

South of the city Goose Creek was crossed by irrigation canals of a local irrigation district, and on occasion, prior to 1954, the district would flush the channel of the canal by opening gates allowing the water from the canal to discharge into Goose Creek.

Some time before 1964 the City of Burley started to expand to the south and in 1964 the city began construction of a system of curbs and gutters and storm drains in the newly developed area in south Burley. The city discharged the waters from these storm drains into the old channel of Goose Creek. The area being drained was fairly flat land west of the plaintiffs' prop-

erty which area previously had been farm land which would absorb all the water from the melting snows and from rain storms.

The water discharged from the drains into the Goose Creek channel, flowed onto the plaintiffs' properties and precipitated this action.

The trial court found, in summary, that except for irrigation water discharged by the irrigation district and occasional waste water seepage, the Goose Creek channel in the City of Burley had not carried any natural runoff since the completion of the Oakley dam in 1921. The court further found that the channel of Goose Creek below the dam to the Snake River had been altered or altogether eliminated in places inside and outside the city limits. Based on its finding of fact the court concluded that the city had no right to discharge waters into the remnants of the Goose Creek channel which crossed the plaintiffs' lands or to construct storm sewers which would discharge waters and encroach on the plaintiffs' properties.

The primary issues on this appeal are whether the Goose Creek channel in the City of Burley is a natural watercourse or drain, and whether the city has the right to discharge surface waters from its streets into Goose Creek.

It is to be noted that the city does not own any lands which are riparian to the stream. However, the city contends it is nonetheless entitled to discharge the storm waters collected in its streets into Goose Creek, and thus it is an upper landowner holding a right or servitude in lower lands to drain water or alternatively to discharge water in a natural channel meandering through those lower riparian lands.

■ This contention by the city is premised on its assumption that Goose Creek exists as a natural watercourse.[1] However, the trial court found upon the basis of substantial evidence that no water has flowed down the full course of the stream below the Oakley dam since 1921. The channel south of the city where it has been crossed by the canals of the irigation district has been partly filled and farmed by others. Northerly from the city boundaries the channel is not distinguishable. Houses were built in the old bed. The court made explicit findings on the nature of the channel of the creek and it is evident that the watercourse as previously known no longer exists.

■ This court adheres to the civil law rule (as opposed to the common enemy rule. Annot. 59 A.L.R.2d 421 [1958]) which recognizes a natural servitude of natural drainage between adjoining lands so that the lower owner must accept the "surface" water which naturally drains onto his land. Loosli v. Heseman, 66 Idaho 469, 162 P.2d 393 (1945). However, in Teeter v. Nampa and Meridian Irrigation Dist., 19 Idaho 355, 114 P. 8 (1911), it was held that waters could not be artificially accumulated and then cast upon lower lands in unnatural concentrations.

■ Before the expansion of the City of Burley into the area where it constructed the system of curbs and gutters and storm drains, the surface waters from rain and melting snow percolated into this ground and there was no flow of this water. Upon the expansion of the city into this new area the ability of the land to absorb this surface water was lost; and the city to remove the surface water constructed the curbs, gutters and storm drain sew-

---

1. In Hutchinson v. Watson Slough Ditch Co., 16 Idaho 484, 488, 101 P. 1059 (1909), the court approved a jury instruction which defined a natural watercourse or drain in the following manner.

"The jury is instructed that a watercourse is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water." This court subsequently restated this definition of a water course in Scott v. Watkins, 63 Idaho 506, 516, 122 P.2d 220 (1942), and Loosli v. Heseman, 66 Idaho 469, 481, 162 P.2d 393 (1945).

ers, effectively concentrating into a small area the accumulated surface water. In Levene v. City of Salem, 191 Or. 182, 229 P.2d 255 (1951), the Supreme Court of Oregon held that a city has no right to artificially collect drain water from a drain system and cast them upon the lands of another in unnatural volumes even though they were turning the waters so collected into a watercourse. This same principal was discussed by this court in Teeter v. Nampa and Meridian Irrigation Dist., supra. In this case the principal is even more obvious since the old watercourse no longer existed.

These collected waters never drained onto the plaintiffs' lands prior to construction of the storm sewer drains, and the statutory period had not elapsed before this action was instituted by plaintiffs. Thus, no prescriptive right or servitude to drain the concentrated surface waters onto plaintiffs' lands was established.

The city has cited numerous cases discussing the right of a municipality to discharge drain sewers into existing watercourses at least when such discharge is within the carrying limits of the channel of the watercourse. We must observe that in this instant case the discharge by the city was not into a watercourse. Regardless of who may have been responsible for the destruction of the natural watercourse of Goose Creek, the trial court recognized that it no longer exists and such finding based on substantial evidence forecloses the question here. Nor did the city seek to utilize the provisions of I.C. § 42–1104 to institute proceedings to obtain a right of way to a natural waterway.

For the foregoing reasons it is the conclusion of the court that the judgment of the trial court must be affirmed. Costs to respondents.

SHEPARD, C. J., and DONALDSON, J., concur.

McQUADE, Justice (dissenting).

I am unable to agree with the majority's holding because of its adverse consequences on the lands of persons through which periodic streams or drainages flow.

This action concerns the right of the City of Burley to use the waterbed of Goose Creek for drainage of its storm drains. As it originally existed, Goose Creek was a natural stream that flowed northerly from the mountains south of Oakley until it emptied into the Snake River. A watercourse has been defined by this Court as,

"A watercourse is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water." [1]

In its original state, Goose Creek was a watercourse.

In 1921 a dam was constructed across Goose Creek near Oakley, Idaho. The dam impounded the waters of the creek, and the stream ceased to exist below the dam except for natural drainage. Portions of the creek have been filled in but that portion within the city limits of Burley still exists as a stream channel with well-defined banks. Although the stream bed does not always have water in it, the record indicates that there is natural drainage into the creek bed from rains and during the spring thaw. There is also testimony that water has been diverted from canals owned by the Burley Irrigation Dis-

1. Hutchinson v. Watson Slough Ditch Company, 16 Idaho 484, 488, 101 P. 1059 (1909); see: Loosli v. Heseman, 66 Idaho 469, 162 P.2d 393 (1945); Scott v. Watkins, 63 Idaho 506, 122 P.2d 220 (1942).

trict during flood periods, and that until 1954, water was diverted by the District into the stream bed to flush out the canals.

It has been recognized in this state that an upper landowner has an easement of drainage in land of a lower landowner to the extent that water naturally follows from the upper to the lower tract.[2] The record reveals that at one time Goose Creek was a watercourse carrying approximately 5,000 inches of water through the respondent's property. Because of the dam the amount of drainage has been dramatically reduced, but the creek bed as it still exists within the city of Burley still retains the capacity to carry more water than washed into the creek by the city's drains. Since the drainage servitude through the respondent's lands has never been abandoned they cannot complain of the increased use because the increased drainage is from lands naturally draining into the creek and the use does not exceed the capacity of the creek.[3] The respondents cannot force the city to abandon its use of a natural drainage.

The respondents argue that the natural drainage course has been abandoned because lower landowners have filled in the creek bed. What the lower landowners do is of no concern to the city unless the natural drainage is inhibited. The only requirement is that the drainage be maintained. The respondents claim that the city's drainage stagnates on their property, but there remedy is against lower obstructing landowners, not the city.

The majority's holding applies to the thousands of streams in Idaho that dry-up periodically and will result in claims by lower landowners that the stream or drainage has been abandoned. Drainages are an easement on the lower landowners property even if they flow only during spring thaws or after heavy rains. The lower landowners cannot be allowed to block these natural drainages causing the upper landowner to have to find an alternative means of dispursing excess water.

The trial court's judgment that the city does not have the right to use the natural drainage should be reversed.

BAKES, J., concurs.

---

2. See: Harper v. Johannesen, 84 Idaho 278, 371 P.2d 842 (1962); Langley v. Deshazer, 78 Idaho 376, 304 P.2d 1104 (1957); Loosli v. Heseman, 66 Idaho 469, 162 P.2d 393 (1945).

3. Carter v. Hawaii County, 47 Hawaii 68, 384 P.2d 308 (1963); Youngblood v. City of Los Angeles, 160 Cal.App.2d 481, 325 P.2d 587 (1958); Callens v. Orange County, 129 Cal.App.2d 255, 276 P.2d 886 (1954); Wellman v. Kelly, 197 Or. 553, 252 P.2d 816, (1953); City of Englewood v. Linkenheit, 146 Colo. 493, 362 P.2d 186 (1961).