920 P.2d 386

Larry ABRAMS, Plaintiff,

v.

James PORTER and Grace Porter, husband and wife; James H. Wilkins and Jane Doe Wilkins, husband and wife; First Security Bank of Helena; Martin DeBoer and Jane Doe DeBoer, husband and wife; Charles R. Elliott and Jane Doe Elliott, husband and wife; William O. Bernard and Mary Bernard, husband and wife; Harold A. Downs and Betty Downs, husband and wife; Carnell Properties, Inc., a Washington corporation; Victor and Jane Doe Carnell, husband and wife; International Medical Marketing, Inc.; Timberland Resources, Inc.; and Farmers and Merchants Bank of Rockford, Defendants.

RILEY CREEK LUMBER COMPANY, Real Party in Interest–Appellant,

v.

William M. FANNING, Michael E. Schmitz and Karen Schmitz, as assignees of Defendant Carnell Properties, Real Parties in Interest–Respondents.

RILEY CREEK LUMBER COMPANY, Plaintiff–Respondent,

v.

William M. FANNING, Michael E. Schmitz and Karen M. Schmitz, husband and wife, Bi–State Properties, Inc., Formerly Known as Carnell Properties, Inc., and Victor Carnell and Shirley Carnell, husband and wife, Defendants–Appellants.

Nos. 21460, 21864.

Supreme Court of Idaho,
Boise, March 1996 Term.

May 31, 1996.

Rehearing Denied Aug. 13, 1996.

Stamper, Sherman, Stocker & Smith, P.S., Spokane, Washington; Hawley, Troxell, Ennis & Hawley, Boise, for appellant. Merlyn W. Clark, argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for respondents. Mark S. Prusynski, argued.

JOHNSON, Justice.

This is a mortgage redemption case involving two appeals, one from the determination of the proper amount for redemption and one from a quiet title action. In the quiet title appeal, we conclude that the redemption was not valid because the assignment of redemption rights by a dissolved corporation was not effective. Because of this disposition of the quiet title appeal, the appeal concerning the determination of the proper redemption amount is moot.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Although there are many complex circumstances involved in these appeals, the following are the only ones we find necessary to recite:

November 26, 1986: Real property (the property) in Bonner County, Idaho was conveyed to Carnell Properties, Inc. (the corporation), a Washington corporation wholly owned by Victor Carnell. Victor Carnell was at that time, and at all times relevant to these appeals, married to Shirley Carnell, and they constituted a marital community under the laws of the State of Washington.

December 1986: Various mortgages executed by the corporation encumbering the property were recorded in Bonner County.

May 26, 1988: The corporation changed its name to Bi–State Properties, Inc. Victor Carnell remained the sole shareholder.

February 21, 1989: The corporation was administratively dissolved pursuant to Washington law.

December 19, 1991: A mortgage foreclosure action (the foreclosure action) was filed in the Bonner County district court (the trial court) to foreclose a mortgage on the property.

April 20, 1993: The trial court entered a decree of foreclosure ordering the sale of the property and establishing the interests of various parties in the proceeds of the sale.

May 28, 1993: Riley Creek Lumber Company (Riley Creek) purchased the property at the foreclosure sale.

August 28, 1993: The corporation, by "Victor Carnell, President," assigned its statutory rights to redeem the property (the assignment) to William M. Fanning (Fanning) and Michael E. Schmitz and Karen M. Schmitz (Schmitz), husband and wife.

February and March 1994: Fanning and Schmitz negotiated unsuccessfully with Riley Creek concerning the redemption of the property.

April 1994: Fanning and Schmitz filed a motion in the foreclosure action seeking an order determining the proper amount to be paid to redeem the property. Riley Creek opposed the motion.

May 1994: Without objection, the trial court joined Riley Creek, Fanning, and Schmitz as parties in the foreclosure action and determined the amount necessary to redeem the property from Riley Creek (the redemption amount).

May 27, 1994: Fanning and Schmitz filed with the Bonner County sheriff (the sheriff) a notice of intention to redeem (the notice), together with a check for the redemption amount.

May 28, 1994: The sheriff issued a certificate of redemption stating that he had received from Fanning and Schmitz the notice and the redemption amount.

June 3, 1994: Riley Creek deposited the redemption amount with the clerk of the trial court and initiated a quiet title action (the quiet title action) seeking to quiet title to the property against Fanning, Schmitz, the corporation, and Victor and Shirley Carnell.

July 14, 1994: Riley Creek appealed the trial court's order in the foreclosure action determining the redemption amount.

December 29, 1994: The trial court quieted title to the property in favor of Riley Creek.

January 30, 1995: Fanning and Schmitz appealed the trial court's judgment quieting title in favor of Riley Creek.

This Court consolidated the appeals.

## II.

## THE REDEMPTION WAS NOT VALID BECAUSE THE ASSIGNMENT OF REDEMPTION RIGHTS BY THE CORPORATION WAS INEFFECTIVE.

■ Fanning and Schmitz assert that the assignment was effective. We disagree.

We first note that the trial court concluded that the assignment was not effective because it was not a valid deed and that, therefore, Fanning and Schmitz were not entitled to redeem the property because they were not successors in interest to the redemption rights of the corporation. We conclude that there is a more fundamental reason why the assignment was not effective.

In 1989, when the corporation was administratively dissolved, Washington law contained the following provision: "Upon the filing of the certificate of administrative dissolution, the existence of the corporation shall cease, except as otherwise provided in this chapter, . . . ." WASH.REV.CODE § 23A.28.125(3) (1987). In 1989, this chapter of the Washington law also provided as follows:

The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholder, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. The directors of any such corporation shall hold title to the property of the corporation as trustees for the benefit of its creditors and shareholders.

WASH.REV.CODE § 23A.28.250 (1987).

The significance of the two-year requirement for "action or other proceeding" in WASH.REV.CODE § 23A.28.250 as it existed up to July 1, 1990 is made clear by another statute that in 1989 provided as follows: "A corporation administratively dissolved under WASH.REV.CODE § 23A.28.125 may apply to the secretary of state for reinstatement within two years after the effective date of dissolution." WASH.REV.CODE § 23A.28.127 (1987). The Washington courts have made clear that action taken by the dissolved corporation beyond the two-year limitation period for reinstatement is ineffective because the dissolution becomes irrevocable at that time. *Pacesetter Real Estate, Inc. v. Fasules,* 53 Wash.App. 463, 767 P.2d 961, 964–65 (1989). When Washington amended its Business Corporation Act in 1989, effective

July 1, 1990, it continued the requirement that an administratively dissolved corporation has only two years within which to apply for reinstatement. WASH.REV.CODE § 23A.14.220(1) (1994).

Based on Washington law, on February 21, 1991, two years after the administrative dissolution of the corporation, the corporation ceased to have any existence. Therefore, on August 28, 1993, when the corporation assigned its statutory redemption rights to Fanning and Schmitz, it had no powers under Washington law to do so.

We note that Victor Carnell purported to sign the assignment only as president of the corporation, not individually. Therefore, it is unnecessary for us to examine the effectiveness of any assignment of whatever community property interest Victor and Shirley Carnell had in the redemption of the property.

### III.

### RILEY CREEK IS NOT PRECLUDED FROM CHALLENGING EFFECTIVENESS OF ASSIGNMENT BY CLAIM PRECLUSION, WAIVER, LACHES, OR QUASI ESTOPPEL.

■ Fanning and Schmitz assert that Riley Creek is precluded from challenging their standing by res judicata (claim preclusion), waiver, laches, and quasi estoppel. We disagree.

Fanning and Schmitz contend that claim preclusion prevents Riley Creek from challenging the effectiveness of the assignment because Riley Creek did not present this challenge in the foreclosure action in opposition to the motion for determination of the proper redemption amount. By their motion, Fanning and Schmitz sought only "an order determining that the proper amount for the redemption of the subject real property in this action from Riley Creek . . . is the sum of $439,013.70." They did not seek a ruling from the trial court that the assignment was valid or that they had a right to redeem. This was a unique procedure to which Riley Creek submitted itself solely for the purpose of allowing the trial court to determine the redemption amount. After an

oral ruling by the trial court concerning the redemption amount and a written order concerning the amount of interest to be included in the redemption amount, Riley Creek entered into a stipulation (the stipulation) with Fanning and Schmitz stating that "the amount necessary to redeem the property from Riley Creek Lumber Company as of April 11, 1994, is the sum of $450,338.70." This stipulation contained the following reservations:

> By entering into this stipulation, Riley Creek Lumber Company does not waive its right to appeal any and all aspects of the court's orders and decisions in this matter nor to claim that the amount tendered by Fanning and Schmitz is insufficient because of errors in the trial court's orders and decisions. Further, Riley Creek Lumber does not by this stipulation waive, prejudice, or compromise any other claim or defense it may have to Fanning and Schmitz's attempted redemption not otherwise specifically stipulated herein.

The trial court's order issued after the stipulation did not even address redemption by Fanning and Schmitz, but instead concluded: "The sum to be tendered to Riley Creek Lumber Company for redemption of the subject property as of April 11, 1994 is the sum of $450,338.70." These circumstances negate any application of claim preclusion.

■ We also conclude that there is no basis for applying the doctrines of waiver, laches, or estoppel to preclude Riley Creek from challenging the effectiveness of the assignment. Fanning and Schmitz initially moved to dismiss Riley Creek's quiet title action pursuant to Rule 12(b)(6) of the Idaho Rules of Civil Procedure, raising the defenses of waiver and laches. Fanning submitted an affidavit in support of the motion in which he stated that after Riley Creek rejected their initial redemption tender in March 1994, he and Schmitz borrowed money to make another tender in April 1994, which Riley Creek also rejected. Fanning also stated that after entering into the stipulation concerning the redemption amount, he and Schmitz borrowed more money to make a

redemption tender based on that amount. Fanning concluded his affidavit by stating as follows:

> If we had been aware at anytime that Riley Creek believed that we lacked standing to redeem the property because of a defective assignment of Carnell Properties redemption rights, we would have taken immediate action to legally clarify that issue before we borrowed $450,000 plus to tender for redemption of the property. Riley Creek's contentions in this lawsuit are 180° different from our previous negotiations over the last six to seven months.

Because Fanning and Schmitz presented matters outside the pleadings in support of their motion, the trial court properly treated the motion as one for summary judgment. I.R.C.P. 12(b).

■ Fanning and Schmitz contend that Riley Creek waived the right to challenge the assignment by not doing so in response to the motion to determine the redemption amount in the foreclosure action. "In order to establish waiver the intention to waive must clearly appear, although it may be established by conduct." *Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 782, 839 P.2d 1192, 1196 (1992). In this case there is no evidence that Riley Creek intended to waive a challenge to the assignment. To the contrary, the stipulation states that Riley Creek did not "waive ... any other claim or defense it may have to Fanning and Schmitz's attempted redemption not otherwise specifically stipulated herein."

■ Fanning and Schmitz contend that laches bars Riley Creek's challenge to the assignment because Riley Creek (1) did not notify Fanning and Schmitz of the challenge when they attempted redemption, (2) did not raise the issue at the time they opposed the motion to determine the redemption amount in the foreclosure action, and (3) did not institute a declaratory judgment action earlier to determine the standing of Fanning and Schmitz to redeem the property. Fanning and Schmitz contend that Riley Creek never told them of any defect in the assignment and that they were prejudiced by borrowing money to redeem and having to pay interest on the money. The basis for the doctrine of laches is that "courts of equity do not favor antiquated or stale demands, and will refuse to interfere where there has been gross laches in commencing the proper action, or long acquiescence in the assertion of adverse rights." *Johnson v. Strong Arm Reservoir Irrigation Dist.,* 82 Idaho 478, 487, 356 P.2d 67, 72 (1960). In this case there is no evidence that Riley Creek's challenge was "antiquated" or "stale," or the result of "gross laches" or "long acquiescence." The parties negotiated over the redemption in February and March 1994, Fanning and Schmitz sought a determination of the redemption amount in April 1994, which the parties stipulated to on May 27, 1994, although the trial court did not enter the order determining the redemption amount until June 3, 1994. Fanning and Schmitz tendered redemption on May 27, 1994, and Riley Creek filed the quiet title action challenging the assignment on May 31, 1994. We see no evidence of the delay required to apply the doctrine of laches.

■ Fanning and Schmitz contend that Riley Creek is estopped from asserting the challenge to the assignment because its conduct in negotiating with them in February and March 1994 and in not raising the challenge in opposition to the motion for determination of the redemption amount "is the same type of deceptive conduct that the Court found equitably unacceptable in [*KTVB v. Boise City,* 94 Idaho 279, 486 P.2d 992 (1971) ]." Although Fanning and Schmitz raised estoppel as an affirmative defense in their answer to Riley Creek's complaint in the quiet title action, they did not explicitly base their motion to dismiss on estoppel, nor did they submit any argument or authorities on this theory in their motion to the trial court. Likewise, the trial court did not address the issue in its decision on the motion. Only Fanning's affidavit in support of the motion to dismiss might preserve this issue for consideration on appeal.

The Court's decision in *KTVB* was based on the doctrine of quasi estoppel, which the Court succinctly described as follows: "The requirements for proper application of quasi estoppel are, then, that the person against whom it is sought to be applied has previous-

# 874

ly taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine." *Id.* at 282, 486 P.2d at 995. Recently we pointed out that "[t]he doctrine of quasi estoppel applies when it would be unconscionable to allow a party to assert a right which is inconsistent with a prior position." *Willig v. State, Dep't. of Health & Welfare,* 127 Idaho 259, 261, 899 P.2d 969, 971 (1995). The only assertion in Fanning's affidavit that could be the basis for a determination of unconscionability is his statement of the amounts Fanning and Schmitz borrowed to tender redemption, together with the interest accruing on those amounts. Because Fanning and Schmitz are entitled to the return of the redemption amount if their appeal is unsuccessful, that amount cannot be the basis for our determining unconscionability. Fanning states that he and Schmitz are obligated to pay 8.25% interest on the redemption amount they borrowed, which accrues at $102.82 per day. Although this now amounts to a significant sum, we do not consider this to be an unconscionable burden to Fanning and Schmitz. There is no indication of their wealth or financial circumstances that would support this conclusion.

## IV.

### CONCLUSION

We affirm the trial court's judgment quieting title to the property in favor of Riley Creek. Because of this result, the decision in the foreclosure action determining the redemption amount is moot.

We award Riley Creek costs on appeal in the quiet title action appeal, Docket No. 21864. We award no costs on appeal in the foreclosure action appeal, Docket No. 21460. No attorney fees were requested.

McDEVITT, C.J., TROUT and SCHROEDER, JJ., and PERRY, J. Pro Tem., concur.